# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: **DAVID E. MOORE, JR.**, Debtor  : CHAPTER 13

: BANKRUPTCY NO. 16-17404

## NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

The Debtor, by his counsel, has filed a Motion for Permission to Sell Real Estate in this case. .

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney.)

1. If you do not want the court to grant the relief sought in the motion or if you want the court to consider your views on the motion, then on or before July 14, 2019, you or your attorney must do all of the following:

   (a) file an answer explaining your position at

   Bankruptcy Clerk 900
   Market Street, Suite 400
   Philadelphia, PA
   19107-4299 (215)
   408-2800

If you mail your answer to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above; and

   (b) mail a copy to the movant's attorney:

   David A. Scholl,
   Esquire 512 Hoffman
   Street Philadelphia,
   PA. 19148
   610-550-1765
   215-316-0175

2. If you or your attorney do not take the steps described in paragraphs 1(a) and

1(b) above and attend the hearing, the court may enter an order granting the relief requested in the motion.

     3. A hearing on the motion has been requested to be held before the Honorable Eric L. Frank on August 6, 2019, at 1:00 PM in Courtroom 1 , United States Bankruptcy Court, 900 Market Street, Philadelphia, PA.

     4. If a copy of the motion is not enclosed, a copy of the motion will be provided to you if you request a copy from the attorney named in paragraph 1(b).

     5. You may contact the Bankruptcy Clerk's office at 215-408-2800 to find out whether the hearing has been canceled because no one filed an answer.

Date: June 24,2019

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: DAVID E. MOORE, JR.,    :    CHAPTER 13
     Debtor

                                                        :    BANKRUPTCY NO. 16-17404

## ORDER GRANTING DEBTOR'S AMENDED MOTION FOR PERMISSION TO SELL REAL ESTATE

AND NOW, this    day of August, 2019, it is hereby ORDERED that the Debtor is granted permission to sell his property at 818 West 9th Street, Wilmington, DE. 18901 ("the Property"), to Wilmington Neighborhood Conservancy Land Bank Corporation for $35,000, free and clear of all liens, pursuant to the terms of the Agreements of Sale attached to the Amended Motion as Exhibit "A," with the proceeds to be distributed to all taxes and other unavoidable liens of taxing authorities against the Property, and any additional settlement costs chargeable to the Debtor, with any remainder payable to the Chapter 13 Trustee, William C. Miller. The title clerk shall email a completed HUD-1 or settlement sheet from the closing directly to the Chapter 13 Trusee, William C. Miller, Esq., and the Debtor's counsel David A. Scholl, at judgescholl@gmail.com, immediately upon the close of the settlement, and the Trustee shall promptly notify the title company of his approval or objections to the sums to be disbursed. Upon the trustee's approval, the title clerk shall send the disbursement check to the Trustee by traceable mail.

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: DAVID E. MOORE, JR., | : | CHAPTER 13 |
| Debtor | : | BANKRUPTCY NO. 16-17404 |

## DEBTOR'S AMENDED MOTION FOR PERMISSION TO SELL REAL ESTATE

The Debtor now comes and seeks permission to sell his real estate consisting of a vacant residential building and lot, known and numbered as 818 West 9th Street, Wilmington, DE 18901, to the Wilmington Neighborhood Conservancy Land Bank Corporation, located at 1007 North Orange St., Wilmington, DE 18901, pursuant to an Amended Agreement of Sale for Delaware Property, dated June 21, 2019, and a Seller's Estimated Closing Costs, which revise the settlement date to the earlier of August 23, 2019, or 21 days after the court approval of this Agreement, and estimate the Debtor's net proceeds at $14,500, copies of which are attached to the original Motion filed, and are available to any interested party upon request from the undersigned, free and clear of all liens, subject to higher and better offers, with the proceeds to be distributed, subject to the court's approval, to all payable real estate taxes and governmental liens, and there being no commissions to the broker payable by the seller, with the net proceeds to be deposited in the Trustee's account for the Debtor, pending further order of the court.

WHEREFORE, the Debtor request that the within Motion be granted.

/s/DAVID A. SCHOLL
512 Hoffman Street
Philadelphia, PA. 19148
610-550-1765
Attorney for Debtor



## AGREEMENT OF SALE for DELAWARE RESIDENTIAL PROPERTY

*This is a legally binding agreement; if not understood, seek competent legal advice prior to signing.*

THIS FORM IS DESIGNED AND INTENDED FOR THE SALE AND PURCHASE OF RESIDENTIAL REAL ESTATE LOCATED IN THE STATE OF DELAWARE

**1. PARTIES.**
SELLER: DAVID E. MOORE, JR

Address: 1201 ERIE AVENUE, PHILADEPHIA PA 19140

BUYER: WILMINGTON NEIGHBORHOOD CONSERVANCY LAND BANK CORPORATION

Address: 1007 N. ORANGE STREET, WILMINGTON, DE 19801

**2. PROPERTY.** Buyer hereby agrees to purchase from Seller and Seller agrees to convey to Buyer that Property identified as
TAX PARCEL # 2602830069 being situated in NEW CASTLE County, Delaware and further identified as:
818 W 9TH STREET
WILMINGTON DE 19801

**3. PAYMENT TERMS.**
A. PURCHASE PRICE  $ 35,000.00
To be paid as follows:
B. DEPOSIT UPON SIGNING THIS AGREEMENT  $
In the form of ☑ Check ☐ Cash ☐ Other
C. DEPOSIT DUE WITHIN  10  DAYS OF ACCEPTANCE  $ 500.00
D. _____  $
Remaining balance will be paid at settlement.

All sums deposited by Buyer prior to the time of final settlement shall be placed in a *non-interest bearing* escrow account with Listing Broker ("Escrow Broker") unless otherwise specified in this Agreement. Any funds delivered to the Escrow Broker within 15 calendar days of settlement shall be certified funds. *Funds paid by Buyer at settlement shall be in cash, certified check, cashiers check, treasurer's check, wire transfer or a Delaware attorney's escrow check.* Seller's net proceeds shall be paid by check from the settling attorney's escrow account unless other arrangements are made with the attorney.

**4. INCLUSIONS/ EXCLUSIONS.** Unless specifically excluded by this Agreement the purchase price shall also include the following, as and if now installed, stored in, or located on the Property: all presently existing plumbing, heating, electrical and central air conditioning systems; and all other permanent or attached fixtures including but not limited to, all existing shutters, awnings, wall to wall carpeting, radiator covers, cabinets, shelves, mirrors fixed in place, attic/exhaust fans, lighting and plumbing fixtures, and landscaping. Certain other now existing items which may be considered personal property, whether installed or stored upon the Property are included, as follows: **(If neither column is checked, item shall be considered excluded.** *Should the Sellers Disclosure of Real Property Condition Report differ from the below list of included items, the below list shall supersede):*

| YES | NO | | YES | NO | | YES | NO | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | Range with oven | ☐ | ☐ | Draperies/Curtains | ☐ | ☐ | Wall Mounted Flat Screen TV # |
| ☐ | ☐ | Range Hood-exhaust fan | ☐ | ☐ | Drapery/Curtain rods | ☐ | ☐ | Wall brackets for TV # |
| ☐ | ☐ | Cooktop-stand alone | ☐ | ☐ | Shades/Blinds | ☐ | ☐ | Surround sound system & controls |
| ☐ | ☐ | Wall Oven(s) # | ☐ | ☐ | Cornices/Valances | | | |
| ☐ | ☐ | Kitchen Refrigerator | ☐ | ☐ | Furnace Humidifier | ☐ | ☐ | Solar Equipment |
| ☐ | ☐ | with icemaker | ☐ | ☐ | Smoke Detectors | ☐ | ☐ | Attached Antenna/Rotor |
| ☐ | ☐ | Refrigerator(s)-additional # | ☐ | ☐ | Carbon Monoxide Detectors | ☐ | ☐ | Garage Opener(s) # |
| ☐ | ☐ | Freezer –free standing | ☐ | ☐ | Wood Stove | ☐ | ☐ | with remote(s) # |
| ☐ | ☐ | Ice Maker-free standing | ☐ | ☐ | Fireplace Equipment | ☐ | ☐ | Pool Equipment |
| ☐ | ☐ | Dishwasher | ☐ | ☐ | Fireplace Screen/Doors | ☐ | ☐ | Pool cover |
| ☐ | ☐ | Disposal | ☐ | ☐ | Electronic Air Filter | ☐ | ☐ | Hot Tub, Equipment |
| ☐ | ☐ | Microwave | ☐ | ☐ | Window A/C Units # | ☐ | ☐ | with cover |
| ☐ | ☐ | Washer | ☐ | ☐ | Attic fan | ☐ | ☐ | Sheds/Outbuildings # |
| ☐ | ☐ | Dryer | ☐ | ☐ | Whole house fan | ☐ | ☐ | Playground Equipment |
| ☐ | ☐ | Trash Compactor | ☐ | ☐ | Bathroom Vents/Fans | ☐ | ☐ | Irrigation System |
| ☐ | ☐ | Water Filter | ☐ | ☐ | Window Fan(s) # | | | |
| ☐ | ☐ | Water Heater | ☐ | ☐ | Ceiling Fan(s) # | ☐ | ☐ | Water Conditioner (owned) |
| ☐ | ☐ | Sump Pump | ☐ | ☐ | Central Vacuum | ☐ | ☐ | Water Conditioner (leased) |
| ☐ | ☐ | Storm Windows/Doors | ☐ | ☐ | with attachments | ☐ | ☐ | Fuel Storage Tank(s) (owned) |
| ☐ | ☐ | Screens | ☐ | ☐ | Intercoms | ☐ | ☐ | Fuel Storage Tank(s) (leased) |
| | | | ☐ | ☐ | Satellite Dish | ☐ | ☐ | Security/Monitoring Systems (owned) |
| | | | ☐ | ☐ | with controls & Remotes(s) | ☐ | ☐ | Security/Monitoring Systems (leased) |

Seller's Initials _____    Buyer's Initials  WMC

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

ADDITIONAL INCLUSIONS (Not previously checked)
(Specify): ANY APPLIANCES AS IS

ADDITIONAL EXCLUSIONS (Not previously checked)
(Specify): SELLERS PERSONAL PROPERTY AND ALL DEBRIS

All property sold by this Agreement is called the "Property". No items shall be replaced or substituted without prior written approval of all parties.

**5. RENTAL/LEASE.**
(a)    The Property ☐ is ☒ is not subject to any tenant rental/lease agreements. Seller will not alter any existing agreement nor enter into any new rental/lease agreement without Buyer's written consent and will assign all existing leases and transfer security deposits, and any other pre-paid items to Buyer at final settlement. Buyer agrees to cooperate with Seller's Rental Agency by signing the necessary documents **prior to completion of settlement** to facilitate the existing rentals after final settlement.
(b)    The Property ☐ is ☒ is not subject to any third party rental/lease agreements including but not limited to oil or gas tank leases and/or security monitoring system lease agreements. Seller will not alter any existing agreement nor enter into any new rental/lease agreement without Buyer's written consent. Buyer and Seller agree to mutually cooperate with the transfer of any rental/lease agreements prior to final settlement.

**6. ☐ Yes    ☒ No FINANCING CONTINGENCY.**
(a)    Buyer's obligation to purchase the Property shall be contingent on Buyer's ability to obtain mortgage financing pursuant to the terms set forth below. Each of the terms below as applicable shall be deemed essential to this financing contingency and Buyer shall not make application for any mortgage financing the terms of which would differ or deviate from the requirements set forth below that would be adverse to Seller's interest without Seller's express prior written consent. The interest rate shall be at the prevailing rate. Should, after Buyer makes application consistent with the terms set forth below, and has diligently and in good faith pursued that application, any commitment for mortgage financing that may be issued deviate from one or more of such terms, and Buyer elects not to accept the financing thus offered, or the application is denied, Buyer may, at Buyer's sole election, void this Agreement, in which event all deposits will be returned to buyer. The terms of mortgage financing are the following:

Type of financing: _____N/A_____                    Loan Amount: _____N/A_____

Term in years: _____N/A_____                        Maximum loan to value ratio: _____N/A_____

Final date for receipt of mortgage commitment (the "Commitment Date"): _____N/A_____

(b)    Buyer will make written application in a manner consistent with that provided for above within __N/A__ calendar days of the effective date of this Agreement, and shall use their best efforts and diligently pursue such financing and promptly file any supplemental information, papers and/or other material that may be requested or required from time to time by the lender. If Buyer fails to make application as specified above, then Seller may declare Buyer in default of this Agreement by tendering written notice of that election to Buyer at any time prior to Buyer making application consistent with the terms set forth above. Should Seller elect to declare Buyer in default before such application is completed, Seller shall have available all the remedies set forth in this Agreement.

(c)    Buyer shall provide Seller, or Seller's Designated Agent, with a copy of any loan commitment or denial within 3 calendar days of receipt. If a commitment consistent with the terms set forth above, or one that differs from those terms which is nonetheless acceptable to Buyer is obtained, and said commitment (1) imposes financial obligations upon the Seller which the Seller has not previously agreed to pay, and does not then agree to pay, and/or (2) is contingent upon the sale of any real or personal property owned by Buyer, then Seller may within 5 calendar days after receipt of a copy of the commitment, cancel this Agreement in writing, and all deposit money shall then be returned to Buyer in accordance with provisions of this Agreement. If such notice is not given, Seller shall be deemed to have accepted said condition(s).

(d)    If a written mortgage commitment is not obtained by the Commitment Date, Seller shall from that time forward have the right to void this Agreement by tendering written notice of that election to Buyer or Buyer's Designated Agent provided, however, that if written mortgage commitment is received after the Commitment Date and prior to any such written notice of termination, then this Agreement shall remain in full force and effect, and Seller's right to void this Agreement for failure to meet the Commitment Date shall be deemed waived. If Seller elects to terminate as set forth in this paragraph, and Buyer is not then otherwise in default of the terms of this Agreement, all deposit money shall be returned to Buyer in accordance with the terms of this Agreement. If Buyer at that time claims that the mortgage application resulted in a denial of that application, and has not provided a copy of that denial in a timely fashion as set forth in paragraph (c) above, the failure to provide a copy of that denial as required herein shall be deemed a default by the Buyer.

Seller's Initials _____  _____    Buyer's Initials _UMP_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

3

7. **SETTLEMENT.** Unless otherwise mutually agreed, final settlement shall be held in __NEW CASTLE__ County, Delaware on _____SEE PARAGRAPH 32_____, or before if mutually agreed upon, at which time possession shall be given and Seller shall deliver all keys in Seller's possession or under Seller's control. It is expressly agreed if a longer time is necessary to secure a survey, or to prepare the necessary legal and financial settlement documents, the date of settlement shall be extended for a reasonable time to effect these conditions.

8. **TIME IS OF THE ESSENCE.** Other than those limited conditions related to settlement as noted in Paragraph 7 above, time is of the essence in this Agreement. Time is of the essence means that the dates and time frames agreed by the parties must be met. Failure to meet stated dates or time frames may result in waiver of contractual rights or default under the terms of this Agreement.

9. **CONVEYANCE.** The Seller acknowledges that the Property is to be conveyed (check one) ☒ **IN FEE SIMPLE;** ☐ **CO-OP OWNERSHIP;** or ☐ **LEASEHOLD SUBJECT TO AN ANNUAL GROUND RENT**, presently in the amount of $_____.

10. **DISBURSEMENT OF DEPOSITS.** The parties to this Agreement agree that deposit monies held on account as specified herein shall only be disbursed under one of the following conditions:
    A. Upon final settlement hereunder; OR
    B. Upon a release being signed by all parties to the transaction authorizing disposition of these funds; OR
    C. Upon the filing of an interpleader action in the proper court, thereby causing these funds to be deposited with the court; OR
    D. At such time as one of the parties to the transaction files suit and the court orders the disbursement of these funds.

Buyer and Seller agree that upon payment of deposit monies into court, neither Buyer nor Seller shall have any further right, claim, demand or action against Escrow Broker regarding the return or disposition of the deposit monies, and Buyer and Seller, jointly and severally, shall indemnify and hold Broker harmless from any and all such rights, claims, demands or actions. In the event of a dispute, and after no less than fifteen (15) days advance notice delivered by certified mail to the Buyer and Seller at their addresses identified in this Agreement of Sale, should Broker elect to file an action of interpleader as herein provided, Buyer and Seller further agree and hereby expressly and irrevocably authorize Broker to deduct from the Deposit all costs incurred by Broker in the filing and maintenance of such action of interpleader including but not limited to filing fees, court costs, service of process fees and attorneys' fees, provided that the amount deducted shall not exceed the lesser of Five Hundred Dollars ($500) or the amount of the Deposit held by Broker. All such fees and costs authorized herein to be deducted may be deducted by Broker from the Deposit prior to paying the balance of the Deposit to the court. Buyer and Seller further agree and expressly declare that all such fees and costs so deducted shall be the exclusive property of Broker. If the amount deducted by Broker is less than the total of all of the costs incurred by Broker in filing and maintaining the interpleader action, then Buyer and Seller jointly, and severally, agree to reimburse Broker for all such excess costs upon the conclusion of the interpleader action.

11. **TRANSFER TAXES; PRO-RATIONS; HEATING FUEL.** Applicable transfer taxes, transfer fees, and/or motor vehicle document fees shall be paid one-half by Buyer and one-half by Seller, except that any exemptions shall benefit only the exempt party. Taxes, special assessments, ground rent, water, sewer, electric and other lienable charges imposed by the State of Delaware, any political subdivision thereof, any school district, neighborhood association and/or condominium common expenses shall be apportioned pro-rata at the time of final settlement, as shall the rents and pre-paid operating expenses if Property is sold subject to a lease, and all security deposits shall be delivered to Buyer at time of settlement. Buyer shall pay Seller at settlement for any heating fuel purchased by Seller and left on Property. Buyer is advised that some propane tanks located on residential properties are leased and ownership of the tank may not be transferred to Buyer as part of this agreement.

☐ Seller ☒ Buyer shall pay for deed preparation. Buyer shall pay all other customary settlement charges and lending costs including survey.

12. **TITLE.** Title is to be good and marketable either fee simple absolute conveyed by Deed of Special Warranty or Lease-hold Estate conveyed by assignment of the existing lease, as applicable, insurable for both owners and lenders coverage at regular rates by a title insurer duly licensed to issue title insurance in the State of Delaware, clear of any liens and encumbrances, except restrictions of record and existing easements generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located. Title shall also be delivered without encroachments or violations of restrictions, zoning or subdivision regulations unless disclosed by Seller on the Seller's Disclosure of Real Property Condition Report. If title objections are raised, Seller shall have 30 days from the date Seller is notified to cure the same, and the settlement date shall be extended accordingly. If objections are not satisfied by the extended settlement date, this Agreement shall terminate and all deposit monies shall be refunded to Buyer and all reasonable legal, loan, survey, and inspection fees incurred by Buyer will be paid by Seller, unless Buyer elects to waive the unsatisfied objections and complete the purchase. Seller may use the purchase price payable to Seller at settlement to discharge liens and encumbrances of record in fixed and ascertainable amounts.

13. **NOTICE/DELIVERY OF DOCUMENTS.** In this paragraph, the word "Agreement" includes offers, counteroffers, addenda or any other notice or agreement between the parties. All agreements shall be in writing. Verbal, electronic or written communication between the parties' or the parties' Designated Agent(s) that this Agreement has been signed and ratified shall be binding on all parties and such notice shall constitute delivery. Written communication shall be effective when sent. A facsimile, electronic record with electronic signature or photocopy of a signed Agreement shall constitute an original. Buyer or Seller, if there be more than one, expressly agree that notice to one shall be notice to all.

Seller's Initials _____    _____    Buyer's Initials _UMT_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

4

**14. NO RECORDING.** This Agreement shall not be recorded or filed in any place of public record. If Buyer does record this Agreement, or permit this Agreement to be recorded, Seller may elect to treat such act as a default and have all the remedies provided herein.

**15. FAIR HOUSING.** All Parties agree to comply with all Fair Housing and Civil Rights laws in the purchase and sale of the Property and further agree specifically not to discriminate against any person because of RACE, COLOR, NATIONAL ORIGIN, RELIGION, CREED, SEX, MARITAL STATUS, FAMILIAL STATUS, AGE, SEXUAL ORIENTATION, GENDER IDENTITY, and/or HANDICAP/DISABILITY.

**16. FIRPTA.** Section 1445 of the United States Internal Revenue Code of 1986 provides that a Buyer of residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if; (a) the purchase price exceeds three hundred thousand dollars ($300,000.00); and (b) the Seller is a foreign person. Unless otherwise stated in an addendum attached hereto, if the purchase price is in excess of three hundred thousand dollars ($300,000.00), Seller represents that Seller is not a nonresident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those are defined by the Internal Revenue Code and applicable regulations) and agrees to execute an affidavit to this effect at time of settlement.

**17. HOMEOWNERS WARRANTY.** Buyer and Seller are advised that Homeowners Warranties are available. A Homeowners Warranty is only part of this Agreement if Buyer or Seller agrees to purchase a warranty. Buyer and Seller are advised to request information about what is included in the warranty and what is excluded (for example, preexisting conditions) and the amount of the deductible.

**18. RISK OF LOSS.** The risk of loss or damage to the Property by fire, wind, storm or other casualty until settlement shall be borne by Seller. If any part of the property is damaged or destroyed by fire or other casualty loss, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by settlement date. If Seller is unable to do so, Buyer may terminate this Agreement and the deposit monies shall be refunded to Buyer in accordance with the terms of this Agreement.

**19. CONDITION OF PROPERTY; INSPECTIONS.** Seller shall deliver the Property in substantially the same physical condition as of the date of this Agreement unless repairs are agreed to as part of the inspection processes explained in paragraphs 20, 21 and 22. However, the electrical, plumbing, wastewater/septic system, well, heating, air conditioning, and any other electro-mechanical systems, appliances and equipment included in this Agreement shall be in operating condition at time of final settlement unless otherwise disclosed in the Seller's Disclosure of Real Property Condition Report Form or elsewhere in this Agreement of Sale. Seller's responsibility for these items shall expire at the time of settlement.

Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement or as a result of the inspections. However, specific actions required by this Agreement or agreed to by addendum resulting from the inspections, such as "repair defective electric outlet in the kitchen," will remain part of this Agreement.

Any failures of the Property occurring between the time of final acceptance and settlement shall be repaired by Seller, at Seller's expense, prior to settlement. Seller is responsible for insuring that utilities are turned on during inspections, appraisals and pre-settlement inspection. Seller agrees to permit access to Property by any authorized appraiser, inspector or contractor as required by the lender or by other terms of this Agreement. Property shall be "broom clean" and free of debris at time of final settlement or occupancy (whichever occurs first).

Buyer shall have the responsibility of scheduling a pre-settlement inspection of Property within 48 hours prior to settlement to verify that Property is in the condition required by this Agreement including conditions disclosed and accepted by Buyer elsewhere in this Agreement or by addendum.

Except as expressly contained herein, no other warranties or representations have been made by Seller or relied upon by the Buyer, and upon settlement all the Seller's obligations for condition of the Property under this Agreement shall expire. It is understood and agreed by the parties hereto the Broker(s)/Salesperson(s) assumes no responsibility for defects concerning the physical condition of the Property described herein and all improvements thereon. Buyer represents that they have made a satisfactory inspection of the Property and agrees to accept the Property in its present condition except as otherwise provided in this Agreement.

**20.** ☐ Yes    ☒ No    **WOOD DESTROYING INSECT INSPECTION REPORT.**
Buyer shall procure, at Buyer's expense (unless prohibited by the type of mortgage financing, in which case it shall be procured by the Buyer at Seller's expense), a wood destroying insect inspection report (WDI) from a company holding a Pesticide Business License or an individual licensed by the Department of Agriculture as a Commercial Pesticide Applicator (Restricted Use) Category 7B Wood Destroying Pest Control (WDI Inspector).

The inspection shall include the house, attached or detached garage, and improvements attached to the house or garage, but not other detached items on the Property, such as (but not limited to) sheds, fences, wood piles, mulch beds, etc., unless such items are specifically listed herein.
The Buyer shall deliver to Seller a copy of the WDI report no later than _____ (date).

    (a) If there is no active infestation, prior infestation, prior treatment or damage from infestation, then no further action is needed by either party.

Seller's Initials _____ _____    Buyer's Initials _WW_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

(b) If the report indicates that there is any active infestation, prior infestation, prior treatment or damage from infestation, then Buyer may obtain an inspection to determine if the structural integrity of the property has been impaired and provide an estimate for treatment and repairs. The party who pays for the pest inspection shall pay for the structural inspection ("the first structural report") and estimate. If the first structural report states that the structural integrity has not been impaired, no repairs by the Seller shall be required.

(c) If the cost to treat and repair damage exceeds 10% of the Purchase Price, Buyer may declare this Agreement null and void, in which case the deposit shall be returned to Buyer in accordance with provisions in this Agreement, and each party shall be relieved of further liability to the other.

(d) If (c) does not apply, then Seller shall have the option of treating the infestation and having any structural impairment corrected by licensed contractors, at Seller's expense prior to settlement. Seller shall, within 5 calendar days, notify buyer in writing whether or not Seller will exercise its option to do any required work. If Seller elects to do any required work, Seller shall deliver to Buyer a written report prepared by a WDI inspector/Licensed contractor itemizing the treatment/repairs to be made. After the treatment/repairs have been completed, Seller shall provide Buyer with a written statement from the licensed contractor certifying that the repairs required by the first structural report have been completed and the integrity of those areas is no longer structurally impaired. This report shall be provided by settlement. Buyer may, at Buyer's expense, hire a representative to be at the Property while the Seller's contractor makes repairs. If Seller elects not to correct or fails to provide written notice within 5 calendar days, Buyer shall have the option of proceeding to settlement without reduction of the purchase price or declaring this agreement null and void in writing and being repaid all deposit money. Written notice of Buyer's election to declare this agreement null and void must be delivered to Seller within 5 calendar days after receiving Seller's written notice or Seller's failure to give written notice.

(e) If Buyer does not declare this agreement null and void, there shall be no liability of Seller for the infestation or damage, no obligation of Seller to correct, no reduction of the purchase price, no credit to Buyer at settlement for the cost of correction or re-inspection and Buyer shall be responsible for any correction or re-inspection required by Buyer's lender. If this paragraph applies, Buyer purchases the Property in "as is" condition and waives all claims under this paragraph against the Seller, the Broker(s) and Salesperson(s), for any damage to the structure by wood destroying insects.

21. ☐ Yes    ☒ No **HOME INSPECTION CONTINGENCY.** (If neither is checked, this contingency is waived).

Written report of major defects, any subsequent inspections, and request for repairs, if any, due to Seller by _____ (date).

Written response from Seller due to Buyer by _____ (date).

Written negotiations (if any) to be completed by _____ (date).

Other systems or items to be inspected by the home inspection company _____

If buyer is not purchasing a newly constructed home, the Property may have minor problems associated with a previously owned property. A major defect is any deficiency that causes an item to perform in an unsafe manner or that prevents the item from performing its intended function. The inspection shall be limited to the house, attached or detached garage(s), improvements attached to the house or garage(s) and the electrical, plumbing, wastewater/septic system, well, heating, air conditioning, and any other electro-mechanical systems, appliances and equipment included in this sale.

If "Yes" is indicated above, this Agreement is contingent upon Buyer obtaining a home inspection of the Property and written report (the Inspection), by a home inspection company and/or by a licensed contractor/professional of Buyer's choice at Buyer's expense. If Buyer does not choose to obtain an Inspection, or if major defects are not reported to the Seller by date specified, then Buyer has waived the Home Inspection contingency.
If the home inspection or any subsequent inspections discovers major defects, Buyer shall provide Seller with a written request for repairs and a copy of the relevant portions of the inspection report. Any subsequent inspections necessitated by the initial inspection shall be at the direction and expense of Buyer, (unless requested by Seller for negotiations which shall then be at the direction and expense of Seller), performed by a licensed contractor/professional, and completed within the time frames provided herein. The Broker(s) shall not be responsible for determining the necessity of additional inspections. Buyer and Seller agree that Broker(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and shall not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

The request for repairs must be made by the deadline specified. Seller shall then, in writing:

(a) Agree to correct any major defects at Seller's sole cost and, if necessary, by a licensed contractor/professional. All required permits must be secured by Seller. Written proof of completion shall be supplied to buyers at least two days prior to settlement; OR

(b) Refuse to correct the major defects; OR

(c) Enter into a mutually agreeable written agreement with Buyer providing for particular repairs to the Property and/or credit to Buyer at Settlement if this is acceptable to the mortgage lender.

If the Seller refuses to correct the major defects, fails to respond in writing to Buyer's request, or an agreement about such repairs is not negotiated, then Buyer may notify Seller in writing, no later than one day after the date written negotiations are to be completed as specified above, of Buyer's intent to purchase the Property in its present condition or this Agreement shall be null and void and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

Seller's Initials _____    _____        Buyer's Initials _JWK?_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

6

It is understood that general statements as to the condition of the Property contained in this Agreement, such as "electrical system shall be in working order at the time of settlement," will not obligate Seller to repair items noted in the Home Inspection Report unless Seller agrees to make repairs according to the terms of the Home Inspection paragraph.

Seller will have all items and systems covered by this inspection operative at the time of inspection (including fuels). Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement. However, specific actions required by this Agreement, such as "repair defective electric outlet in the kitchen," will remain part of this Agreement.

**22. OTHER INSPECTIONS.** The purpose of these inspections is to independently evaluate the condition of the items and identify major defects, if any. A major defect is any deficiency in an item that causes the item to perform in an unsafe manner or that prevents the item from performing its intended function. Buyer must object to any major defect identified by an inspection report by the date the report is due to Seller as listed below, or Buyer is deemed to have accepted Property with the defect and the contingency is automatically considered to be satisfied. If this Agreement is cancelled as a result of the election of any of the options below, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement of Sale. There shall then be no further obligation or liability of either party, broker or salespeople, and all monies on deposit shall be returned to Buyer in accordance with the terms of this Agreement. Buyer and Seller agree that Broker(s)/Agent(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition. Each included contingency is subject to the terms and remedies described herein.

**22a. ON-SITE WASTEWATER/SEPTIC SYSTEM.**
For all properties utilizing an on-site wastewater/septic system that are sold or otherwise transferred to other ownership, the Seller shall have the system pumped out and inspected by a Class F and Class H licensee, respectively, prior to completion of the sale. If an inspection has occurred within the previous 36 months and the Seller can provide proof of the pump out and inspection and the system is not a cesspool or seepage pit, then the inspections will suffice. It will be the Seller's sole cost and responsibility to provide the Buyer with the report (Class F and Class H) indicating that the system is in working order with no major defects by _____N/A_____ (date). If the Seller of an individual on-site wastewater/septic system provides proof of a licensed operator or has a service contract with a certified service provider then the Seller shall provide evidence of same to Buyer no later than the date specified herein and these requirements shall have been met.

**22b.  N/A  On-Site Wastewater/Septic Contingency (Buyer's Option).** (Only a part of this Agreement if marked yes or checked)
Notwithstanding the provisions of 22a herein, the Buyer may elect to have their own on-site wastewater/septic system inspection by a Class H system inspector (see list at www.dnrec.delaware.gov) of Buyer's choice and at Buyer's expense, to verify that the on-site wastewater/septic system is in working order with no major defects. This shall be in addition to 22a herein and shall not relieve the Seller from the provisions of 22a. In such event Buyer must provide Seller with a copy of the written report describing any major defect by N/A _____ (date).

**22c.  N/A  Well Water Contingency.** (Only a part of this Agreement if marked yes or checked)
Buyer may have the water inspected by a water testing company of Buyer's choice, at Buyer's expense, to verify that the well is in working order with no major defects, and there is an absence of total coliform bacteria, and meets EPA standards for nitrate, chloride, and lead. Buyer must provide Seller with a copy of the written report describing any major defect. Report of major defects, if any, due to Seller by N/A _____ (date).

**22d.  N/A  Radon Contingency.** (Only a part of this Agreement if marked yes or checked)
Buyer may have Property inspected by a registered radon service company of Buyer's choice, at Buyer's expense, to verify that the average radon level is less than 4 picocuries/liter. Buyer must provide Seller with a copy of the written report containing any evidence of higher radon levels than herein stated.
Report of major defects, if any, due to Seller by N/A _____ (date).

**22e.  _____  Swimming Pool Contingency.** (Only a part of this Agreement if marked yes or checked)
Buyer may have the swimming pool inspected by a pool maintenance company of Buyer's choice, at Buyer's expense, to verify that the pool & equipment are in working order with no major defects. Buyer must provide Seller with a copy of the written report describing any major defect.
Report of major defects, if any, is due to Seller by _____ (date).

**SELLER'S DUTIES.** In the event Seller provides Buyer or Buyer provides Seller timely written notice of a major defect of any of the above required or selected items, the Seller shall notify Buyer within 5 calendar days of said notice whether Seller (a): intends to correct the major defect(s) at Seller's sole cost prior to settlement, (b): refuses to correct any of the major defects, or (c): offers to negotiate with Buyer about the major defects with such negotiations to be completed within 5 additional calendar days from date of Seller's notification. If the negotiations are not completed in the time specified above or Seller fails to provide written notification, then this shall mean that Seller has refused to correct the major defect.

Seller's Initials _____  _____          Buyer's Initials _WMF_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

7

**BUYER'S DUTIES.** If Seller has refused to correct the major defect or a negotiated agreement to correct major defects is not agreed to, then Buyer must notify Seller in writing within 5 calendar days of receiving Seller's notice whether Buyer will (a): accept Property with the defect and no reduction of price or (b): declare the Agreement null and void with all deposit money being returned to Buyer. Buyer's failure to provide written notice shall result in this Agreement becoming null and void and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

**23. ENVIRONMENTAL CONDITIONS.** Buyer is hereby advised that environmental conditions may exist about which Seller has no knowledge including but not limited to: buried fuel tanks, asbestos, radon, lead paint, and urea-formaldehyde foam insulation. Buyer may negotiate with Seller for permission to conduct environmental testing as a term or condition of this Agreement. Any agreement relating to environmental testing must be in writing and signed by both Buyer and Seller. Further information can be obtained from the following agencies: United States Environmental Protection Agency, Washington DC; Radon Health Systems Protection, Dover DE; State of Delaware Department of Health and Social Services, Dover DE; United States Consumer Products, Safety Commission, Washington DC.

**24. BUYER'S DEFAULT.** If Buyer fails to deliver any payment or additional deposit, fails to make mortgage application as specified herein, knowingly furnishes false or incomplete information to Seller, Broker or the lending institution concerning Buyer's legal or financial status, fails to cooperate in the processing of the mortgage loan application, resulting in failure to obtain a mortgage financing commitment, or violates or fails to perform any of the terms or conditions of this Agreement, then Seller shall have the right and option to cancel this Agreement and to retain any deposit money as liquidated damages for such default by Buyer, or exercise any legal or equitable right or remedy to which Seller may be entitled and in connection therewith to apply any deposit money either on account of the Purchase Price or on account of damages, as Seller may elect.

**25. SELLER'S DEFAULT.** If Seller shall, for some reason not excused herein, fail or refuse to perform Seller's obligation to Buyer, and Buyer shall not also be in default, Buyer shall either have all monies paid herein on account of the Purchase Price, (together with such reasonable costs incurred in preparation for settlement), refunded forthwith, whereupon all rights and obligations herein shall cease and terminate, or Buyer shall have the right to seek any remedy and maintain any action against Seller to which Buyer may be entitled whether at law or in equity.

**26. NO REPRESENTATION.** Buyer and Seller understand and acknowledge that Broker(s) are not at any time authorized to make any representations about this Agreement or the Property other than those written in this Agreement. Broker(s), Agent(s), Subagent(s) and employees of Broker(s) do not assume any responsibility for the condition of the Property or for the performance of this Agreement by any or all parties hereto. By signing this Agreement, Buyer and Seller acknowledges they have not relied on any representations made by Broker(s) or any Agent(s), Subagent(s) or employees of Broker(s), except those representations written in this Agreement.

**27. INDEMNIFICATION/ATTORNEY FEES.** In the event any dispute arises under this Agreement between Seller and Buyer resulting in Broker(s) or any Agent(s), or Subagent(s) or employees of Broker(s) being a party to any litigation, Seller or Buyer, whichever is unsuccessful, shall indemnify and hold Broker(s), Agent(s), Subagent(s) or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees, provided such litigation does not result in a judgment against Broker(s), Agent(s), Subagent(s) or employees of Broker(s) for acting improperly under this Agreement.

Should Buyer waive any inspections or provisions in this Agreement of Sale, either as the result of marking the item NO, failing to mark the item YES, or not following through with an inspection, Buyer shall hold Broker(s), Agent(s), Subagent(s) or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees resulting from Buyer's waiver of such provision. In the event a dispute arises under this Agreement between Seller and Buyer resulting in any litigation, and/or arbitration, Buyer or Seller, whichever is unsuccessful, shall also be liable for the other parties' court costs and attorney's fees.

**28. AGENCY DISCLOSURE.**
As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm that the following agency relationships exist:

I. _____, Listing Broker
☐ Seller's Agent        ☐ Dual Agent

II. _____, Designated Listing Agent
☐ Seller's Designated Agent    ☐ Designated Dual Agent

III. PANTANO REAL ESTATE INC _____, Selling Broker
☒ Buyer's Agent        ☐ Dual Agent        ☐ Seller's Subagent

IV. PAUL M. PANTANO _____, Designated Selling Agent
☒ Buyer's Designated Agent    ☐ Designated Dual Agent    ☐ Seller's Subagent

Seller's Initials _____  _____    Buyer's Initials _UW_ _WE_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

8

**29. SUCCESSION.** This Agreement shall benefit and bind the parties hereto, their respective heirs, personal representatives, successors and assigns. Buyer may not assign Buyer's interest in this Agreement without Seller's prior written consent, which consent will not be withheld unless such assignment may adversely affect Seller.

**30. BROKERAGE FEE.** Buyer and Seller agree that the Broker(s)/Agent(s) was responsible for procuring this Agreement, and agree that a brokerage fee for services rendered as specified in a separate agreement for compensation will be paid. If not previously paid, the settlement attorney is hereby irrevocably authorized and directed to collect the brokerage fee as specified in the separate agreement and pay the same to the Broker at final settlement as a convenience to the parties, and not as a limitation upon Buyer's or Seller's liability to pay the brokerage fee.

**31. ADDENDUMS.** These Addendums are only applicable if marked YES or checked. NO or a blank means you are waiving the opportunity to include the contingency or clause. If language in this Agreement and Addendum(s) are in conflict, unless otherwise provided herein, then the addendum(s) will supersede this Agreement.

N/A   Seller's Disclosure of Real Property Condition Report, unless exempt by State Law. (Additional form required.)
N/A   Lead Based Paint Disclosure Form, unless exempt by Federal Law         (Additional form required)
N/A   Radon Disclosure Form, unless exempt by State law                      (Additional form required)
N/A   DUCIOA Resale Certification Form (if applicable) OR _____ Contingency Addendum   (check which applies)
N/A   Tax Deferred (1031) Exchange
N/A   Buyer's Financial Information
N/A   Mortgage Letter with Credit Check
N/A   FHA/VA Amendatory Language and *For Your Protection: Get a Home Inspection*. (Additional form required)
N/A   Homeowners Warranty paid for by _____ Warranty Company
N/A   Additional Addenda not included above
N/A

**32. ADDITIONAL TERMS AND CONDITIONS.** Property is to be sold strictly AS IS.
Seller is responsible for providing access to the property for purposes of Buyers Broker taking a water meter reading 14 days prior to settlement. Settlement shall take place on the earlier of August 23, 2019 or 21 days after the bankruptcy court has approved this sale.
Buyer shall pay Buyers Broker commission in the amount of $2500.00 at time of final settlement.

**33. MISCELLANEOUS.** Delaware law governs this Agreement. The paragraph captions are for convenient reference only and are not intended to limit or enlarge the substance of this Agreement. The term Broker(s) when used in this Agreement shall include Broker of Record, Brokerage Organization, Broker Owner, Salesperson(s) and employees involved in this Agreement. The word "Contract" is synonymous with "Agreement" when used herein.

The singular forms "Buyer" and "Seller" are used in this Agreement solely as a convenience and are intended to include all parties who are Buyers or Sellers. Buyer and Seller agree that they have read and fully understand this Agreement, including the Seller's Disclosure of Real Property Condition Report (if applicable), that it contains the entire agreement between them and that they do not rely on any other written or oral representation or statement not expressly written in this Agreement, including any statement of fact or opinion contained in any advertisement, listing agreement, multiple listing description or multiple listing information sheet or made by Seller, any broker, salesperson, or any agent or employee of any of them. If settlement does not take place Buyer and Seller shall each be responsible to pay for services ordered on their behalf, unless otherwise provided for herein. The parties hereto agree to execute and deliver any other instrument(s) or document(s) that may be necessary or convenient to carry into effect the provisions of this Agreement, and the parties agree to otherwise cooperate in good faith as may be necessary to complete the settlement contemplated herein.

**34. CHANGES.** There have been changes in the form of this Agreement as copyrighted by the Delaware Association of REALTORS® other than filling in the blanks.  ☐ Yes ☒ No. If yes, describe changes.

**35. ENTIRE AGREEMENT.** This Agreement and any addenda hereto contain the final and entire Agreement between the parties and may not be modified or changed except by written agreement signed by all parties. The parties agree that neither they nor their Broker(s)/Agent(s) shall be bound by any terms, conditions, statements, warranties nor representations, oral or written, not contained herein. FAILURE TO CHECK OR MARK A BOX "YES" MEANS BUYER HAS WAIVED THE RIGHT TO INCLUDE THE CONTINGENCY OR CLAUSE AS PART OF THIS AGREEMENT.

Seller's Initials _____ _____        Buyer's Initials _[initialed]_

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

9

**36. FINAL ACCEPTANCE.** This Agreement is not binding until signed by and delivered to all parties.

**IN WITNESS WHEREOF** the parties have signed this Agreement on the date stated below, thereby showing their intent to be bound hereby.

_[signatures]_ _____    6/21/2019   12:11 PM
BUYER                                      DATE & TIME

_____    _____
BUYER                                      DATE & TIME

_____    _____
SELLER                                     DATE & TIME

_____    _____
SELLER                                     DATE & TIME

---

**SELLER HEREBY REJECTS** this offer as of

_____
DATE & TIME

_____    _____
SELLER                              SELLER

---

_____ CODE ___    _____
LISTING BROKER                              BRANCH OFFICE

_____    _____
OFFICE PHONE NUMBER                         FAX NUMBER/EMAIL ADDRESS

_____ CODE ___    _____
SALES ASSOCIATE                             PHONE NUMBER

PANTANO REAL ESTATE _____ CODE ___    _____
SELLING BROKER                              BRANCH OFFICE

302-888-0300                                302-888-0332  paul@pantanore.com
OFFICE PHONE NUMBER                         FAX NUMBER/EMAIL ADDRESS

PAUL M. PANTANO                             302-354-0792
SALES ASSOCIATE                 CODE ___    PHONE NUMBER

---

Deposit received: $_____ ☐ Cash  ☐ Check # _____    Effective/ratification date of Agreement _____

©Copyright 2009 by Delaware Association of REALTORS®. All Rights Reserved. Revised August 2013. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.



**PANTANO**
REAL ESTATE

# Seller's Estimated Closing Costs

**Property Address**  818 W 9th Street  GOOD FAITH ESTIMATE OF SELLERS PROCEEDS

**ANTICIPATED SALES PRICE**     $35,000.00

## Transaction Costs

| | | |
|---|---|---|
| **0.00%** | Commission | $0.00 |
| **2.00%** | Transfer Tax | $700.00 |
| **0.00%** | Settlement Help for Buyer | $0.00 |
| | 1st Mortgage Balance | |
| | 2nd Mortgage Balance | |
| | 3rd Mortgage Balance | |
| | Mortgage Satisfaction Recording | |
| | Unpaid School Taxes | $17,600.00 |
| | Unpaid County Real Estate Taxes | $1,950.00 |
| | Misc; recording, delivery, other | $250.00 |
| | **- TOTAL TRANSACTION COSTS** | **$20,500.00** |

## Estimated Prorations

| | |
|---|---|
| Pre-Paid Taxes* | $0.00 |
| Pre-Paid Water/Sewer* | $0.00 |
| Oil Reimbursement | $0.00 |
| **+ TOTAL PRORATIONS** | **$0.00** |
| **NET PROCEEDS TO SELLER** | **$14,500.00** |

*Prorations vary depending upon the time at year that settlement occurs

---

This information is presented with the understanding that it may be used as a basis for the acceptance of an Agreement of Sale by a Seller and for the placement of a loan. The undersigned hereby authorizes the agent to disclose to the Seller, cooperating brokers and any lender, all or any portion of the information contained in this financial information sheet. The above information is true and correct to the best of my/our knowledge, and it is my/our understanding that furnishing false or incomplete information may result in forfeiture of deposit or other financial loss. By our signature(s) we acknowledge receipt of a copy of this financial information sheet.

---

**Seller** _____ **Date** _____     **Listing Agent** _____ **Date** _____

**Seller** _____ **Date** _____